MENG, Respondent, v. ST. LOUIS & SUBURBAN
RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1904.

1. PERSONAL INJURIES: Contributory Negligence: Jury Question. In an action for personal injuries, where the evidence as to contributory negligence is such that reasonable men might reach different conclusions as to whether plaintiff was guilty of contributory negligence, the question is one of fact to be submitted to the jury.

2. STREET RAILWAYS: Driving Across Track: Right to Assume the Carmen Will do Their Duty. One driving upon a street, in approaching a street railway track for the purpose of crossing at the intersection of streets, has a right to assume that a motorman in charge of any car that may be approaching will have his car under such control that he can reduce his speed and avoid a collision; and he has a right to assume that the motorman will give warning of his approach to a street crossing, by the usual signal.

3. PRACTICE: Instruction: General Terms. In an action for personal injuries caused by the alleged negligence of defendant, an instruction which submits the question of negligence in general terms clearly expressing the rules of law involved, is not objectionable if it would not mislead a jury of average intelligence.

4. ————: Pleading: Last Chance: General Allegation. And where such injuries were caused by a collision with a street car, in the operation of which it was the duty of the motorman to keep a vigilant watch to prevent a collision, the use of the plural in applying such duty to the "agents and servants" of the defendant company, is not objectionable as imposing upon the conductor also the duty of maintaining a vigilant watch.

5. ————: ————: ————: ————. In such an action where there was any evidence tending to show that the motorman could have stopped the car in time to avoid the injury, it was proper to submit the question of defendant's negligence upon the last chance or humanitarian theory under a general allegation of negligence in the petition, without having put the same in issue by a specific allegation.

6. ———: **Vigilant Watch Ordinance: Common Law Negligence.**
In an action for personal injuries received by a collision with
a street car, where the action is founded upon common law
negligence, proof of a violation of the vigilant watch ordinance
is admissible, though the same is not pleaded as bearing upon
the question of general negligence.

7. **EVIDENCE: Expert Testimony: Speed of Car.** In an action
for personal injuries received from a collision with a street car,
expert testimony is admissible to show in what time and space
an ordinary car similar to the one in question could be stopped,
where the hypothetical question embodies substantially all the
facts relating to the subject of inquiry.

Appeal from St. Louis City Circuit Court.—*Hon.
William Zachritz*, Judge.

AFFIRMED.

*Dawson & Garvin* and *Leonard Wilcox* for appellant.

(1) The instructions for nonsuit ought to have
been given. Moore v. Railway, 176 Mo. 544, 75 S. W.
672; Guyer v. Railway, 174 Mo. 351, 73 S. W. 584;
Gettys v. Railway, 78 S. W. 82; Guiney v. Railway, 167
Mo. 595, 605, 67 S. W. 296; Petty v. Railway, 179 Mo.
666; Van Bach v. Railway, 171 Mo. 338, 71 S. W. 358;
Reno v. Railway, 180 Mo. 469; Maxey v. Railroad, 113
Mo. 1, 20 S. W. 654; Feary v. Railway, 162 Mo. 105,
62 S. W. 452; Cogan v. Railway, 73 S. W. 740; Schmitt
v. Railway, 160 Mo. 53, 54, 60 S. W. 1043; Payne v. Railway, 129 Mo. 420, 31 S. W. 885; and other cases cited
in argument. (2) Neither the pleadings nor the evidence warranted the submission of the cause to the jury
on the humanitarian theory. Therefore instruction 3
was error. Davies v. Railway, 159 Mo. 1, 59 S. W. 982;
Hanselman v. Railway, 88 Mo. App. 123; Ledwidge v.
Railway, 73 S. W. 1008; Booth on St. Rys., sec. 303;
Rider v. Railway, 171 N. Y. 152; and other cases cited
in argument. (3) It was error to give instructions 1

and 4. Kelsay v. Railway, 129 Mo. 362, 30 S. W. 339; Hook v. Railway, 162 Mo. 582, 63 S. W. 360; Vogg v. Railway, 138 Mo. 172, 36 S. W. 646. (4) Also to give instruction 2. State v. Rutherford, 152 Mo. 130, 53 S. W. 417; Judd v. Railway, 23 Mo. App. 62; McFadin v. Catron, 120 Mo. 274, 25 S. W. 506. (5) It was error to refuse instructions 2 and 3 of the refused instructions, and also number 4. Vandewater v. Railway, 135 N. Y. 588. (6) It was error to admit the vigilant watch ordinance in evidence. Gebhardt v. Transit Co., 97 Mo. App. 381, 71 S. W. 448; Sepetowski v. Transit Co., 76 S. W. 696.

*Seneca N. & S. C. Taylor* and *Thomas S. Meng* for respondent.

(1) An electric street railway company operating dangerous machinery at a rapid speed in a populous city, is bound to know that vehicles and pedestrians have an equal right to the use of street crossings; therefore it is the duty of the motorman to be on the lookout, and to take all reasonable measures to avoid injuring such persons passing over the track at a street crossing, and failure to do so is negligence. Pope v. Railway, 99 Mo. 405, 12 S. W. 891; Senn v. Railway, 108 Mo. 142, 18 S. W. 1007; Henry v. Railway, 113 Mo. 525, 21 S. W. 214; Sweeny v. Railway, 150 Mo. 385, 51 S. W. 682; Schafstette v. Railway, 175 Mo. 152, 74 S. W. 826; Riska v. Railway, 180 Mo. 168. (2) When the motorman discovers a horse entering upon a railroad track drawing a vehicle, a short distance ahead of his car upon a street crossing, it is his duty to have the power by which he propels the car under his control so as to avoid a collision, if by reasonable care he can do so, and failure of this duty is negligence. Oates v. Railway, 168 Mo. 544, 68 S. W. 906; Klockenbrink v. Railway, 172 Mo. 678, 72 S. W. 900; Hutchinson v. Railway, 88 Mo. App. 383; Grocery Co. v. Railway, 89 Mo. App.

391; Robinson v. Railway, 112 Fed. 484. (3) If it was negligence on the part of plaintiff (which we positively deny), in driving across defendant's track, on the occasion in question, still it was the duty of the motorman after seeing him in danger, or if by the exercise of ordinary care he could have seen him in danger in time to have prevented the collision, to have averted it, if it could be done by the exercise of ordinary care, and failure to do so would be negligence. Morrissey v. Ferry Co., 43 Mo. 384; Brown v. Railroad, 50 Mo. 466; Meyers v. Railway, 59 Mo. 231; Matthews v. Grain Elev. Co., 59 Mo. 478; Harland v. Railway, 60 Mo. 25; Werner v. Railway, 81 Mo. 368; Bergman v. Railway, 88 Mo. 685; Dunkman v. Railway, 95 Mo. 244, 4 S. W. 670; Jennings v. Railway, 99 Mo. 394, 11 S. W. 999; Morgan v. Railway, 159 Mo. 262, 60 S. W. 195; Holden v. Railway, 177 Mo. 456; Meeker v. Railway, 178 Mo. 173; Jett and Jett v. Railway, 178 Mo. 664; O'Keefe v. Railway, 81 Mo. 386; McAndrew v. Railway, 88 Mo. 100; Meyers v. Transit Co., 99 Mo. App. 371, 73 S. W. 379; Dairy Co. v. Transit Co., 98 Mo. App. 20, 71 S. W. 726. (4) Where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact to be settled by a jury, and this, whether the uncertainty is raised by conflict in the testimony, or because of the facts being undisputed, fair-minded men may draw different conclusions from them. Sioux City v. Stout, 84 U. S. 657; Railway v. McDane, 135 U. S. 554; Railroad v. Converse, 139 U. S. 469; Railroad v. Ives, 144 U. S. 408; Railroad v. Powers, 149 U. S. 43; Railroad v. Griffiths, 159 U. S. 603; Railroad v. Gentry, 163 U. S. 353; Warner v. Railroad, 168 U. S. 348. (5) Plaintiff had the right to assume that the motorman would have his car under control, as was his duty to do, so as to avoid a collision with a vehicle. Gratiot v. Railway, 116 Mo. 451, 464, 21 S. W. 1094; Richards v. Railroad, 49 S. W. (Ky.) 419; Cooper v. Railroad, 8 Amer. Neg. 454. (6) Plain-

tiff had the right to assume that the motorman would not disregard any duty imposed upon him by law, or by the rules of the company as to sound the gong as the car approached the street crossing. Weller v. Railway, 164 Mo. 180, 199, 64 S. W. 141; Sullivan v. Railroad, 117 Mo. 221, 23 S. W. 149; Kenney v. Railroad, 105 Mo. 270, 15 S. W. 983, 16 S. W. 873; Kelly v. Railroad, 101 Mo. 67; Eswin v. Railroad, 96 Mo. 290, 9 S. W. 577; Petty v. Railroad, 15 Mo. 318. (7) Where an action is based on common-law negligence and a city ordinance is not pleaded, still the violation of such ordinance is admissible in evidence bearing upon the question of general negligence. This has always been the rule in Missouri. Mapes v. Railway, 76 Mo. 367; Brackston v. Railroad, 77 Mo. 455; Minter v. Railroad, 82 Mo. 132; Robertson v. Railway, 84 Mo. 119; Nutter v. Railway, 22 Mo. App. 328; Welch v. Railway, 26 Mo. App. 264; Barr v. Railway, 30 Mo. App. 251; Fusili v. Railway, 45 Mo. App. 541; Bradford v. Railroad, 64 Mo. App. 479; Sepetowski v. Railway, 76 S. W. 696; Goodwin v. Railroad, 75 Mo. 76.

STATEMENT.

The petition herein declared upon common-law negligence in general terms thus specified:

"The agents and servants of defendant, managing its said cars, operated upon said track, then and there so carelessly, negligently and unskillfully conducted themselves that a certain motor car, then and there in charge of said agents and servants of defendant, was caused to strike the buggy in which plaintiff was driving, with great force and violence, and carrying the same, together with the horse and plaintiff, forward forty-five or fifty feet, breaking, crushing and completely destroying the buggy and the harness, maiming and wounding the horse so that thereafter he died, and throwing plaintiff with great force from his said buggy,

to the ground, thereby severely bruising and wounding him upon the head, body, back, arms and legs, and shocking his nervous system from which wounds, bruises, contusions and shock he suffered great bodily pain and mental anguish, and still suffers such bodily pain and mental anguish, and was permanently injured.''

The defense embraced a general denial united with a plea of contributory negligence which in turn was denied by the reply.

Pendleton avenue, sixty feet in width a public highway traversing the western portion of the city of St. Louis in northern and southern directions, is intersected by the defendant's private right-of-way sixty-four feet between the building lines, upon which, on September 11, 1901, it was operating street cars by electric power at a speed authorized in that district of the city by municipal ordinance at a maximum rate of twenty miles per hour. Between eight and nine o'clock in the forenoon of the day designated, which was bright and clear, plaintiff, a physician and surgeon of middle age, approached defendant's tracks from the south in a single-horse top buggy until the animal's head was within a short distance (about four feet), of the southern track, when he drew up to permit the passage of an east-bound supply or baggage car; knowing from experience that such cars were frequently followed by passenger cars, and as the cover of his vehicle extended far in front, he leaned forward, looking westwardly, as soon as the east-bound car had gone by, and perceiving no car drawing near from that direction, having also looked eastward and listened for a car on the farther or northern track, upon which the west-bound cars traveled, he started to drive over both tracks at a speed of four miles per hour. The gauge of the tracks was four feet ten inches, the space separating them, six feet one inch, and plaintiff was driving about the center of the street. The supply car had passed thirty feet or more

beyond him when he started across, and the horse had passed the west-bound track, when the buggy was struck about the middle by a car moving westwardly at a rapid rate of speed and carried a considerable distance before the motorman stopped it, to the destruction of the vehicle and animal, and the serious personal injury of the plaintiff. The testimony of plaintiff that no gong or signal was sounded from the approaching car, was corroborated by several witnesses, passengers in the car, and a spectator at the scene of the accident, but defendant's testimony was as positive to the contrary. The motorman of the colliding car testified that the baggage car had gone by, when he saw the plaintiff, and his car was then about twenty or thirty feet east of Pendleton avenue, but the conductor of the baggage car deposed that the latter car met the passenger car forty to sixty feet beyond the street.

There was much discrepancy in the testimony respecting the rate of speed at which the car was being propelled, plaintiff's witnesses estimating it as exceeding the rapid limit determined by ordinance, but defendant's testimony was to the effect that no unlawful speed was employed or even could have been attained by such car. The directions to the jury were made up of a comprehensive series of instructions which will be presently considered in detail so far as deemed essential. The jury returned a verdict for plaintiff in a substantial sum and defendant has appealed.

REYBURN, J. (after stating the facts).—1. The question conspicuous at the threshold of an examination of the case, and earnestly and diligently discussed by respondent, is the right of plaintiff to have the case submitted to the jury by the denial of the customary imperative instruction tendered at close of plaintiff's testimony. Defendant's contention being that as the colliding car was in plain view and within a short dis-

tance, it was manifestly impossible, if in the proper exercise of his senses of sight and hearing, the plaintiff could have escaped warning of its approach and in attempting to pass over the tracks before a rapidly moving car he was convicted of such contributory negligence on his part as to debar his recovery.   The question whether the conduct of a plaintiff, under a given state of facts, constituted contributory negligence has been reiterated to be sometimes a question for the court and sometimes a question for the jury.   Upon the state of facts demonstrated by plaintiff's testimony as surrounding the collision, the conclusion might reasonably be reached that plaintiff was guilty of contributory negligence, particularly in the light of personal details narrated by plaintiff and held up by appellant, as contradictory and inconsistent with conceded facts. But, in considering this question, every reasonable inference and intendment in favor of plaintiff must be deduced from the testimony, and only where the evidence is substantially all one way, and no two opinions can be formed in the minds of fair-minded, reasonable men of ordinary intelligence, should its effect be declared by the court, but where such description of men might well differ as to the conclusion to be drawn from the facts presented by the testimony, and where uncertainty is evidenced as to the existence of negligence or contributory negligence, such question is beyond the province of the court, not one of law but of fact to be determined by the jury, and the weight to be given plaintiff's individual testimony is also for its consideration.

From numerous decisions supporting the foregoing propositions, the following are suggested from the Supreme Court of this State.   Campbell v. Railway, 175 Mo. 161, 75 S. W. 86; Erickson v. Railway, 171 Mo. 647, 71 S. W. 1022; Weller v. Railway, 164 Mo. 180, 64 S. W. 141; Lamb v. Railway, 147 Mo. 171, 48

S. W. 659, 51 S. W. 81; Gratiot v. Railway, 116 Mo. 450, 21 S. W. 1094.

In the Federal Supreme Court the rule has been thus announced and approved in a lengthy series of decisions: "There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and can not be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has delegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." Railway v. Ives, 144 U. S. l. c. 417; Railroad v. Griffith, 159 U. S. 603; Railway v. Gentry, 163 U. S. 353; Warner v. Railroad, 168 U. S. 339; Railroad v. Dade, 135 U. S. 554.

Plaintiff was justified in the belief that the motorman, in obedience to the city ordinance, would not propel the car at an unlawful rate of speed, especially at the intersection of a street in frequent use by pedestrians and vehicles, and also had the right to assume

that the motorman would further have the car, of which he was in charge, under such control, that by resort to the appliances provided for the purpose, he could reduce the speed or stop the car to avoid a threatened collision, and the public, including plaintiff, had the additional right to rely on the discharge of the duty devolved on the motorman of giving warning of the drawing near of the car to a street crossing by signal of the gong, also provided for such purpose. Weller v. Railway, supra; Hutchinson v. Railway, 161 Mo. 246; 61 S. W. 635, 852; Riska v. Railroad, 79 S. W. 445; Gratiot v. Railroad, 116 Mo. 450, 21 S. W. 1094.

Tested by these principles, the court properly left to the jury to determine the existence or absence of contributory negligence on the part of the opposing parties.

2.   The first instruction for plaintiff was as follows:

"1.  ·The court instructs the jury that, it was the duty of the defendant's agents and servants, in the management of the car under their charge, to exercise reasonable care and precaution to prevent any injuries to persons upon the public street crossings, and any failure on their part to exercise such·care and precaution would be such negligence as to make the defendant liable for any injury to plaintiff, resulting from such negligence, unless the jury further ·believe from the evidence, that the negligence of plaintiff contributed directly to the injury sustained by him; and in passing upon the question as to whether the agents and servants of the defendant were or were not negligent, in conducting and managing the car in question at said crossing, you should take into consideration all the facts and circumstances as proved by the evidence to have existed at the time when, and the place where the injury occurred, and you should give to each fact and circumstance, and to the testimony of each witness, such weight only as you may deem such fact, circumstance

or testimony entitled to, in connection with all the evidence in the case.

"By the term negligence, as used in the instruction, is meant the want of that degree of care that an ordinarily prudent person would have exercised under the same, or similar circumstances."

This section of the charge is assailed as misleading and submitting questions of law to the jury, but to neither of which charges it is properly amenable, being a clear expression of the rules of law embodied in it, and the plaintiff being entitled, under the facts established by the testimony on his behalf, to have the question of negligence submitted to the jury. Nor does this instruction, by the use of the plural number, impose on the conductor the duty of maintaining a vigilant watch —being the infirmity condemned in the case cited. Gebhardt v. St. Louis Transit Company, 97 Mo. App. 381, 71 S. W. 448. The jury must be assumed to have consisted of men of average, ordinary intelligence and could not have been so misled by the language employed.

3. The third instruction at instance of plaintiff was as follows:

"The court instructs the jury that, if you believe from the evidence that plaintiff negligently drove upon the railroad track, yet if you further believe from the evidence, that the defendant's motorman operating said car, saw, or by the exercise of reasonable care might have seen plaintiff upon this street and in the act of driving upon said railroad track and in a dangerous situation, in time to have avoided injury to him, by the use of ordinary care, but that said motorman negligently failed to do so, then your verdict should be for the plaintiff."

Common-law negligence, in general terms, embraced any conduct constituting negligence other than by violation of positive duties imposed by absolute legislative enactment. The proposition of appellant can

not be maintained that before the humanitarian theory, as it is characterized, can be submitted to the jury, it must be put in issue by specific allegations in the petition; under the general charge of negligence made by plaintiff, if supported by appropriate proof, he was entitled to have his right of recovery left to the jury, upon the principle that it was the duty of the motorman after seeing him in peril, or, by the exercise of ordinary care, if he could have discovered him in danger in time to have prevented the collision, to have taken means to avert it, if this could have been accomplished by the employment of ordinary care and the failure so to do was negligence on part of appellant.

4. The fourth instruction, refused by the court, directed the jury in arriving at a verdict to disregard the provisions of the so-called vigilant watch ordinance, which had been tendered in evidence, and the failure to declare upon it is assigned as justification for enforcing its withdrawal from consideration by the jury. This municipal enactment has frequently received the consideration of the Supreme Court as well as the attention of this court. *Vide* Gebhardt v. St. Louis Transit Company, supra; Sepetowski v. St. Louis Transit Co., 102 Mo. App. 110, 76 S. W. 693, and authorities enumerated in both cases. In the latter case it was intimated by this court that it was, in effect, properly construed, but declaratory of the common law duty of street car corporations in the operation of their roads in populous cities and, when pleaded, but an inartificial averment of that duty, which might be more happily expressed in more apt and clearer language than that employed in the ordinance itself. Without, however, attempting to add to the interpretation and meaning already fastened upon this ordinance or to further define it, it may be stated with confidence that the proposition is well established that where an action is founded on common-law negligence and an ordinance is not pleaded, proof of the violation of such ordinance

is admissible as bearing upon the question of general negligence. Klockenbrink v. Railway, 172 Mo. 678, 72 S. W. 900; Bradford v. Railway, 64 Mo. App. 475.

5. Plaintiff introduced experienced street car operatives, who were permitted over defendant's objections to testify within what time and space an ordinary car similar to the one in question could be arrested or stopped in the general situation pictured, while operating at the high rate of speed specified. Such character of testimony is generally proper and unobjectionable if the hypothetical question embodies substantially all the facts relating to the subject of the inquiry, which rule might have been more rigidly enforced in the questions addressed to the witnesses interrogated in this case, but no violation constraining reversal was suffered. Other less material and minor objections have been urged on behalf of appellant as entitling it to a new trial, but, while all points made have been diligently investigated, further detailed consideration is not deemed warranted. The case was fairly tried and no error warranting reversal having been indicated, the judgment is affirmed. All concur.