WILLIAM A. KLOECKENER v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—53 S. W. (2d) 1043.

Division One, October 22, 1932.*

*NOTE: Opinion filed at April Term, 1932, September 3, 1932; motion for rehearing filed; motion overruled at October Term, October 22, 1932.

*T. E. Francis, B. G. Carpenter* and *Allen, Moser & Marsalek* for appellant.

*Freeland L. Jackson* for respondent.

HYDE, C.—This is a suit for damages for personal injuries, which the plaintiff sustained in a collision between a street railway work car and his automobile in St. Louis County, while driving home from work on December 5, 1927. Plaintiff, driving north on Hanley Road, was struck by the work car running east on Pershing Boulevard, at the intersection of those streets. Pershing Boulevard is 100 feet wide east of Hanley Road, while west of Hanley Road it is only 80 feet wide. It comes down a hill several blocks long from the west toward Hanley Road but the grade of the last block, between Linden Avenue and Hanley Road, is only one per cent. This block is about 300 feet long.

Plaintiff's evidence consisted of his own testimony; the testimony of an eyewitness to the collision, who lived in an apartment on the northwest corner of the intersection; that of two eyewitnesses, who were in an automobile headed south on Hanley Road, about as far back from Pershing Boulevard as the apartment building; that of two other witnesses, who were in an automobile farther north on Hanley Road and did not see the collision but heard the crash and saw what happened thereafter; and the testimony of a former employee of the defendant Street Railway Company, as an expert, concerning brakes on defendant's work cars. The work car struck plaintiff's car at just about the driver's seat and threw it over to the north side of the street. There was medical testimony as to plaintiff's injuries but no point is made about the amount of the verdict. Defendant offered no evidence.

Plaintiff's evidence tended to show that the pavement in the intersection was rough, wavy and full of holes; that he stopped at the

southeast curb of the intersection; that because this curb was set back 10 feet farther than the southwest curb he could see west only to the next street, Linden Avenue; that he looked to the west and saw no street car nor vehicles in that block; that he looked east and saw none but looked north and saw several automobiles approaching him; that he started slowly across the street in low gear, without again looking to the west, and upon reaching the street car track had reached the speed of about five miles per hour and was shifting to second gear when he was struck by the work car which he never saw until that moment. Plaintiff's evidence further tended to show that the work car was running at from 30 to 35 miles per hour; that there were several men on the front platform and other men in the middle of the car; that the car did not slow up or slacken speed until after it struck plaintiff's automobile; that there was no sound of setting brakes before plaintiff was struck; that no warning signal was sounded; that it carried plaintiff's automobile about 50 feet east of the point of the collision; and that the work car was stopped from 100 to 150 feet from the point of collision. One of plaintiff's witnesses testified that when he first saw the work car it was about 200 feet west of Hanley Road and that plaintiff at that time was coming across the street from 35 to 40 feet south of the car track. Plaintiff's expert witness testified that he was familiar with the work cars used on that particular street car line and that some of them were equipped with hand brakes and that others were equipped with air brakes. He testified that those equipped with air brakes could be stopped, when traveling 30 miles per hour, within 100 feet with safety to the car and the persons thereon, and could be stopped if traveling 35 miles per hour within 150 feet; that those equipped with hand brakes could be stopped within 150 feet when traveling 30 miles per hour, and could be stopped within 200 feet when traveling 35 miles per hour.

The jury found for the plaintiff for $12,500. Upon motion for new trial, the court ordered a *remittitur* of $3,500. This amount was remitted and judgment was entered in favor of plaintiff for $9,000. From this judgment defendant has appealed. Defendant assigns as error overruling its demurrer to plaintiff's evidence, giving plaintiff's Instruction No. 1, and permitting plaintiff to show the distance in which a work car equipped with air brakes could be stopped.

Plaintiff abandoned all of his other charges of negligence and submitted his case to the jury solely upon the issue of negligence under the humanitarian doctrine. Defendant, contending that its demurrer to plaintiff's evidence should have been sustained, says that plaintiff was guilty of contributory negligence as a matter of law, in failing to look again to the west while proceeding across the street. Whether or not this is true is immaterial. Antecedent negligence can-

not be considered in determining liability under the humanitarian doctrine. "When such peril arises the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise ordinary care in certain respects—to make timely discovery of the peril, if it was his duty to be on the lookout, and thereafter to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others." [Alexander v. St. Louis-San Francisco Ry. Co., 327 Mo. 1012, 38 S. W. (2d) 1023 l. c. 1026; State ex rel. Fleming v. Bland, 322 Mo. 565, l. c. 572, 15 S. W. (2d) 798, l. c. 801; see, also, Vowels v. Missouri Pacific Ry. Co., 320 Mo. 34, 8 S. W. (2d) 7; Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014; Eppenstein v. Missouri Pacific Ry. Co., 197 Mo. 720, 94 S. W. 967.]"

■ Defendant further contends that plaintiff's evidence was not sufficient to make a humanitarian case, because plaintiff, proceeding slowly with the ability to stop his car within a few feet, was not in the danger zone until he was very close to the track and defendant says there was no evidence showing where the work car was at that time or that it could have then avoided the collision. As we said in Homan v. Missouri Pacific Ry. Co., (No. 30118, April Term, 1932, not yet reported), quoting from Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 138 S. W. 23, and Logan v. C. B. & Q. Railroad Co., 300 Mo. 611, 254 S. W. 705: "If a given case in that regard is so plain that average, fair minded men cannot reasonably differ about it, a recovery may be denied as a matter of law. But if there is ground for fair difference of opinion about it, then the question is for the jury." Looking at plaintiff's evidence in the light most favorable to plaintiff, as we must in reviewing this question, there was evidence from which the jury was justified in finding that defendant's work car was at least 200 feet east of the intersection when plaintiff, not over 35 feet away from the track, looking away from the approaching work car, was proceeding across the street, with increasing speed, after starting from a complete stop until at the track he had gained momentum "just enough to throw it in second." Defendant argues that plaintiff was not in the danger zone when he was 35 feet away from the track. Where the danger zone commenced was a question for the jury under the facts and circumstances of this case. Defendant was operating its work car on a public street, approaching a much traveled intersection, where it had reason to expect persons to be and where it was required to keep a lookout. Its duty to stop or slacken the speed of its work car commenced at such time as the operator of its car saw, or could have seen by the exercise of ordinary care, that plaintiff was intent on pursuing his journey on across the track oblivious to the

danger. [Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 138 S. W. 23; Maginnis v. Missouri Pacific Ry. Co., 268 Mo. 667, 187 S. W. 1165; State ex rel. Wabash Ry. Co. v. Trimble, 260 S. W. 1000; Logan v. C. B. & Q. Railroad Co., 300 Mo. 611, 254 S. W. 705; Zumwalt v. C. & A. Ry. Co., 266 S. W. 717; Larkin v. Wells (Mo. App.), 278 S. W. 1087; Anderson v. Davis, 314 Mo. 515, 284 S. W. 439; Smith v. St. Louis-San Francisco Ry Co., 321 Mo. 107, 9 S. W. (2d) 939; Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S. W. (2d) 481; Smith v. Kansas City Pub. Serv. Co., 328 Mo. 979, 43 S. W. (2d) 548.] Plaintiff's evidence, in fact, justifies the inference that this condition existed almost immediately after he started across the intersection and that the work car was then more than a block away. Furthermore, we have not taken into consideration the duty to warn plaintiff if he was driving into danger zone too late for defendant to stop its work car. [See Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, l. c. 562, 18 S. W. (2d) 481, l. c 485.] We hold that the demurrer to plaintiff's evidence was properly overruled.

We also hold that there was no error in giving plaintiff's Instruction No. 1. This instruction submitted the case upon the humanitarian doctrine and defendant's principle contention about it is that there was no evidence upon which to submit the issue of negligence under the humanitarian rule. We have already disposed of this contention in ruling on the question of the demurrer to the evidence. As offered by plaintiff, this instruction told the jury that when defendant's carmen saw, or by the exercise of ordinary care could have seen, that plaintiff, unconscious of the approach of the street car, was in imminent peril it became their duty ''to exercise ordinary care to use the means and appliances at hand, if any, *to give or sound a warning of the approach of the said street railway car, or* to stop the same, or slacken the speed thereof, in the shortest time and space possible to avoid striking and injuring plaintiff, having due regard for the reasonable safety of said street railway car and the persons aboard the same;'' then the jury were instructed that the negligent failure to perform this duty justified a verdict for plaintiff. The court struck out the italicized words, concerning the duty to give a warning; so that, as given. the instruction only directed the jury to find for plaintiff if the defendant's carmen negligently failed to stop the car or slacken the speed thereof, although there was in fact evidence to justify including also failure to warn plaintiff, after his peril was or could have been discovered, since all eyewitnesses testified they heard no warning signal. [Stotler v. Chicago & Alton Ry. Co., 200 Mo. 107, 98 S. W. 509.] The instruction was, therefore, certainly not unfavorable to defendant.

Defendant further contends that this instruction should not

have been given because there was no evidence to show whether the work car, which struck plaintiff, was equipped with air brakes or hand brakes and that the jury was, by the instruction, invited into the field of guess work, surmise and conjecture as to whether or not the work car could have been stopped or its speed slackened in time to have averted the collision. As we have shown, supra, plaintiff's evidence justified the finding that the car was far enough away, when its operator could by the exercise of ordinary care have seen plaintiff in a position of peril and oblivious thereto, so that it could have been stopped had it been equipped with hand brakes and traveling (the maximum speed testified to) 35 miles per hour. The evidence was that it actually was stopped within from 100 to 150 feet after it struck plaintiff's automobile. The inference certainly is justified that its speed could have been slackened sufficiently with the least efficient brakes to have avoided the collision.

■ Defendant also objects to the use in the instruction of the word "carmen," arguing that it implied that others, besides the motorman, were under the duty of keeping a lookout and attempting to stop the car. We do not think that the jury could have been misled by the use of this word and believe that they would understand it applied to employee of defendant whose duty it was to operate the car. Such instructions frequently use the plural terms the "agents" and "servants" of defendants operating the car or train and such language has been held not to be misleading. [Meng v. St. Louis & Surburban Ry. Co., 108 Mo. App. 553, 84 S. W. 213.] The instruction given on behalf of defendant limited the duty to the motorman by instructing the jury that "if the motorman in charge of said street car did not see, or in the exercise of ordinary care upon his part would not have seen the imminent peril, if any, of plaintiff . . . in time, etc. . . . your verdict must be for the defendant." We hold that the use of the plural term in plaintiff's instruction was not, therefore, prejudicial error.

■ We also overrule defendant's final contention that it was error for the court to allow plaintiff to show by its expert witness the distance in which a work car could be stopped if equipped with air brakes. Plaintiff did not know what car struck him and therefore did the only thing he could do—showed the equipment of the work cars used on that street car line and the distance in which it was possible to stop both those equipped with hand brakes, and those equipped with air brakes. Defendant had complete information as to which car struck plaintiff, and could have shown what kind of brakes it had, but offered no evidence at all. Defendant's counsel, in the cross-examination of plaintiff, exhibited a picture of a work car which he intimated was the one which struck plaintiff, but did not offer it in

evidence and later objected to plaintiff's counsel using it, in the examination of plaintiff's expert witness, upon the ground that it had not been identified by plaintiff as the work car that struck him. Since the uncontradicted evidence was that the work car actually was stopped in 150 feet or less, defendant could not have been prejudiced by the testimony that it was possible to stop it within that distance. This court said, in Ellis v. Metropolitan Street Ry. Co., supra (234 Mo. 1. c. 685, 138 S. W. 23): "We have held that, when a car actually stops in a certain distance, there is no need of theorizing upon inability to stop in that distance. In such case an expert is *functus officio.*"

The judgment is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.